UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| WILLIAM O. SOTO, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:12-CV-130 |
| | § | |
| LCS CORRECTIONS SERVICES, INC.; | § | |
| dba COASTAL BEND DETENTION | § | |
| CENTER, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court is Plaintiff's Motion for Attorney Fees (D.E. 39), Plaintiff's Motion for Front Pay (D.E. 40), and Defendant's Objection to Jury's Punitive Damages Award (D.E. 55). Each of the motions is addressed individually below.

**A.  Attorney's Fees**

In any suit brought pursuant to Title VII of the Civil Rights Act, the Court, in its discretion, may award the prevailing party reasonable attorney's fees. 42 U.S.C. § 2000e-5(k). Reasonable attorney's fees are calculated through a two-step process called the lodestar method. *Hensley v. Eckerhardt*, 461 U.S. 424, 432 (1983); *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 323–24 (5th Cir. 1995). As a preliminary step, the district court must determine the reasonable number of hours expended by the attorney and the reasonable hourly rate for the attorney. The lodestar amount is calculated by multiplying the reasonable number of hours by the reasonable hourly rate. *La. Power & Light Co.*, 50

F.3d at 324.  The lodestar amount may then be adjusted up or down based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).  These factors are:

> (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 800 n. 18 (5th Cir. 2006).

While the United States Supreme Court has favored "the lodestar approach" when determining a "reasonable fee," this approach does not invalidate contingency-fee agreements between attorneys and clients. *Venegas v. Mitchell*, 495 U.S. 82, 90 (1990).  In *Venegas*, the Supreme Court held that similar language in 42 U.S.C. § 1988 did not bar enforcement of a contingent fee provision.  Thus, the statutorily mandated award of attorney's fees provided for in Sections 1988 and 2000e-5(k) "controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer." *Venegas*, 495 U.S. at 90; *see also Gobert v. Williams*, 323 F.3d 1099, 1100 (2003).  The Court's job is to ensure that the statutory attorney's fees the defendant pays the plaintiff's lawyer are reasonable. *Venegas*, 495 U.S. at 90.

In the case at hand, Plaintiff submitted an Amended Motion for Attorney Fees. (D.E. 63.) Along with his motion, Plaintiff submitted an Amended Declaration from Plaintiff's attorney, Jon D. Brooks, stating that he knows he spent a total of 200 hours on this case, but in recreating his time sheets in this matter, he could only document 162.5 hours. (D.E. 63-1 at 2–3.) Because the case was handled on a contingency fee basis, regular time sheets were not maintained; and consequently, the time sheets submitted may not accurately reflect the hours worked. (*Id*. at 3.) Plaintiff's attorney additionally states that, although his original declaration in this matter requested an hourly rate of $350, he believes he is entitled to $475 an hour based on a recent employment case from the Fifth Circuit, *Miller v. Raytheon Co.*, 716 F.3d 138 (5th Cir. 2013), wherein the Court of Appeals approved hourly rates of $577.50 and $542.50. (D.E. 63-1 at 3.)

Defendant objects that there is no evidence that Plaintiff spent 200 hours of his time prosecuting this case. (D.E. 68 at 1–2.) Defendant asks that the Court, at a minimum, reduce Plaintiff's attorney fees to an amount that can be documented. (*Id*. at 2.) Furthermore, Defendant argues that Plaintiff's 162.5 documented hours are unreasonable given the complexity of the case, the fact that no depositions were taken, and the speed at which the case was tried. (*Id*. at 3.) Defendant argues that this case, at most, required 50 hours of opposing counsel's time to file, prosecute, and try. (*Id*. at 2.) Moreover, Defendant objects that there is no indication in the timesheets of whether any of the hours were expended by a paralegal. (*Id*. at 3.) Defendant's counsel, Gabi S. Canales, submitted an affidavit indicating that she invested 40 hours of time in the case at

the reasonable rate in Nueces County of $250 an hour; she estimates that 50 hours would be a reasonable amount of time to prosecute the case. (D.E. 54 at 4.)

Defendant generally objects to the number of hours claimed by Plaintiff, but fails to specify which specific activities recorded by Plaintiff are unreasonable. Because Plaintiff and his attorney entered into a contingency fee agreement, the attorney did not regularly record his hours during the litigation and was required to recreate his hours ex post facto. Defendant does not argue that Plaintiff's recreation of his hours is impermissible, only that the total number of hours claimed is unreasonable.

In general, the Court does not find the hours Plaintiff submitted for the various activities unreasonable. There are two instances of "block billing" the Court will address. Block-billing large chunks of time may not be reasonable. *See Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-CV-0913-D, 2005 WL 6789456, at *5 (N.D. Tex. Dec. 20, 2005) (collecting cases), *aff'd*, 2007 WL 3085028 (5th Cir. Oct. 23, 2007). However, it is not appropriate to deny all block-billed fees; instead, a district court should perform a percentage reduction or apply a lodestar factor. *Id.* Plaintiff claims 18 hours for miscellaneous activities, which include "routine communication, written and oral, with client, communication with Court, communication with opposing counsel, legal research (WestLaw)—estimated at 1.5 hour per month during course of representation through trial." (D.E. 63-2 at 5.) Additionally, Plaintiff claims 42 hours for trial preparation, which included "reviewing and memorizing documents, with focus on exhibits, preparing witness subpoenas, meeting with client, and reviewing various authorities for substance of claim and rules of evidence." (D.E. 63-2 at 4.) The Court does not find these hours to

be unreasonable for the listed activities. Therefore, the Court will not reduce Plaintiff's block-billed hours.

Defendant also objects that the time sheets do not indicate whether any of the work was completed by a paralegal. The Fifth Circuit has interpreted "attorney's fees" collectible under Section 2000e–5(k) to include expenses incurred by the attorney in the course of providing legal services, including paralegal services, photocopying, and other clerical or secretarial tasks. *Mota v. Univ. of Texas Houston Health Science Center*, 261 F.3d 512, 529 (5th Cir. 2001). Thus, paralegal expenses are collectible, but at a lesser hourly rate. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n. 10 (1989); *Watkins v. Fordice*, 7 F.3d 453, 459 (5th Cir. 1993); *Harris v. Fresenius Med. Care*, No. H-04-4807, 2007 WL 1341439, at *4–5 (S.D. Tex. May 4, 2007). Nevertheless, Defendant fails to specify which activities it believes qualify as paralegal or clerical work. Accordingly, the Court will not reduce the hourly rate for any of the listed activities.

Ultimately, Plaintiff has the burden of establishing the number of hours worked; this burden is satisfied by presenting adequate evidence from which the Court can make a determination as to the number of reimbursable hours. *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990). The Court finds that Plaintiff presented sufficient evidence to establish that he worked 162.5 reimbursable hours.

Moreover, the Court finds that $250 per hour is a reasonable hourly rate and within the range of customary fees charged for this type of case by someone with similar experience working in this geographic area. *See Rhines v. Salinas Const. Technologies, Ltd.*, No. 2:11–CV–00262, 2013 WL 440961, at *1 (S.D. Tex. Feb. 5, 2013); *Junaid v.*

*McHugh*, No. 2:11-cv-00226, 2013 WL 3211571, at *3 (S.D. Tex. Jan. 28, 2013); *Barney v. Hill Country Shooting Sports Center, Inc.*, No. 5:11-cv-00268-HLH, D.E. 29 at 2 (W.D. Tex. Apr. 23, 2012); *Hale v. Napolitano*, No. 5:08-cv-00106, D.E. 92 at 6 (W.D. Tex. Nov. 23, 2009). Plaintiff argues generally that he is entitled to a higher hourly rate based on the novelty and difficulty of the questions involved and the fact that he was precluded from accepting other employment. (D.E. 63-1 at 3.) The Court disagrees. This case was not particularly complicated or lengthy compared to other Title VII cases.

The Court thus calculates a lodestar amount of $40,625. The Court finds that the lodestar amount is reasonable in light of all the *Johnson* factors: the loadstar amount represents the time and labor required; the case did not present any particularly novel or difficult legal issues; the award reasonably compensates Plaintiff's counsel based on the skill required to perform the legal services properly; there is no specific evidence that counsel was unreasonably precluded from accepting other employment due to his involvement in this case; the hourly fee is in line with that charged for similar services in the community; there were not any unreasonable time limitations in this case; the award reasonably compensates Plaintiff's counsel for his work, given the amount involved and the results obtained; the award is reasonable in light of counsel's experience, reputation, and ability; there was nothing particularly undesirable or out of the ordinary about the case; the award is reasonable based on the nature and length of the professional relationship with the client; and this Court has approved awards of this amount in similar Title VII cases. *La. Power & Light*, 50 F.3d at 330 n. 23. Plaintiff's counsel took the case on a contingency basis; however, a lodestar enhancement based on a contingency fee

arrangement is not permitted under Section 2000e-5(k). *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992). Accordingly, the imposition of a lodestar factor is not warranted in the case at hand. Plaintiff is awarded attorney's fees in the amount of $40,625.

Plaintiff additionally requests $33,725 as the fair and reasonable attorney's fees to be awarded if this case is appealed by Defendant. (D.E. 63 at 2; D.E. 63-1 at 3.) Plaintiff asserts that it would be necessary to expend an additional 71 hours to perform the work at a reasonable hourly rate of $475 per hour. The Court finds that Plaintiff's request is premature. Plaintiff may request appellate fees when and if such fees are actually incurred. *See Joe Hand Promotions, Inc. v. On the Rocks Bar & Grill, LLC*, No. EP-11-CV-554-KC, 2012 WL 3129137, at *4 (W.D. Tex. July 30, 2012); *Kingvision Pay-Per-View, Ltd. v. Guerrero*, No. 3:08-CV-1970-G (BF), 2009 WL 1973285, at *5 (N.D. Tex. July 7, 2009) (holding that a plaintiff may apply for an award of post-trial services if and when such fees are incurred); *Nat'l Satellite Sports, Inc. v. Garcia*, No. Civ. A 301-CV-1799D, 2003 WL 21448375, at *3 (N.D. Tex. June 18, 2003).

**B.     Front Pay**

Defendant argues that Plaintiff waived any award of front pay by failing to submit the issue to the jury. (D.E. 67 at 2.) The Court disagrees. A proper award of front pay is determined by the district court, not the jury, although an advisory jury may sometimes be empaneled. *Mota v. University of Texas Houston Health*, 261 F.3d 512, 526 (5th Cir. 2001); *Rutherford v. Harris County*, 197 F.3d 173, 188 (5th Cir. 1999); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 423 n. 19 (5th Cir. 1998); *Hansard v. Pepsi-Cola Metropolitan Bottling Co.*, 865 F.2d 1461, 1470 (5th Cir. 1989); *Reynolds v. Octel*

*Commc'ns Corp.*, 924 F. Supp. 743 (N.D. Tex. 1995) ("Because front pay is an equitable remedy, the court, rather than the jury, determines the amount of the award."); FED. R. CIV. P. 39(c).

As an initial matter, the Court must determine whether Plaintiff's reinstatement with Defendant is feasible. Reinstatement is a preferable remedy, where appropriate, due to the speculative nature of front pay. Thus, front pay may only be awarded where there exists a hostile relationship between the employer and the plaintiff, and reinstatement is not feasible. *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001) ("In cases in which reinstatement is not viable because of continuing hostility between the plaintiff and the employer or its workers . . . , courts have ordered front pay as a substitute for reinstatement."); *Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 257 (5th Cir. 1996); *Persons v. Jack in the Box, Inc.*, No. H-03-4501, 2006 WL 846356, at *2 (S.D. Tex. Mar. 31, 2006) (noting "significant hostility and discord between the parties" as one of the reasons reinstatement was not feasible); *File v. Hastings Entertainment, Inc.*, No. 2:02-CV-0213J, 2003 WL 21436175, at *2 (N.D. Tex. June 18, 2003) (finding that reinstatement not feasible due to hostility between parties); *Griener v. Allstate Ins. Co.*, No. 82-4676, 1987 WL 16454, at *2 (E.D. La. Aug. 4, 1987). The burden is on Plaintiff to show that reinstatement is not feasible. *See Hansard v. Pepsi-Cola Metro. Bottling Co., Inc.*, 865 F.2d 1461, 1469 (5th Cir. 1989).

Plaintiff was employed with the Coastal Bend Detention Center, which is operated by LCS Corrections Service, Inc. (LCS). The evidence at trial demonstrated that there was considerable hostility between Plaintiff and his employer. Defendant intimates that

Plaintiff could obtain alternate employment at the East Hidalgo Detention Center, which is also operated by LCS. (D.E. 67 at 2.) Defendant submitted an affidavit from Michael Striedel, Vice President of Operations for LCS, stating that Mr. Soto "is eligible for employment at East Hidalgo Detention Center should he wish to submit an application." (D.E. 67 at 5.) The East Hidalgo Detention Center is located approximately 114 miles to the south of the Coastal Bend Detention Center. The affidavit does not indicate the position, salary, or benefits for which Mr. Soto would be eligible. Given the paucity of evidence regarding the allegedly equivalent position and the demonstrated hostility between Plaintiff and Defendant, the Court finds that reinstatement is not feasible. *See* 45C AM. JUR. 2D JOB DISCRIMINATION § 2590 (2013) ("Front pay will also be preferred over reinstatement when the only positions an employer offers are not substantially equivalent to the position the victim lost due to discrimination.").

Next, the Court must determine a proper award of front pay to compensate Plaintiff. In calculating an appropriate award of front pay, the Court must engage in "intelligent guesswork" due to the fact such damages are awarded prospectively. *Sellers v. Delgado College*, 781 F.2d 503, 505 (5th Cir. 1986) ("we recognize its speculative character by according wide latitude in its determination to the district courts"). The Fifth Circuit has set forth several non-exclusive factors that the Court may consider in making its determination, including the length of Plaintiff's employment with Defendant, the permanency of the position Plaintiff held, the nature of Plaintiff's work, Plaintiff's age and physical condition, the possibility of the consolidation of jobs, and any other non-discriminatory factors that could have impacted the employment relationship.

*Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 870 (5th Cir. 1991). The Court must be careful to avoid its award becoming a windfall to Plaintiff, as front pay constitutes a form of compensatory damages and is not intended to be punitive. *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 491 (5th Cir. 2007). Furthermore, the Court must consider whether Plaintiff diligently sought other employment. Plaintiff has a duty to mitigate his damages, and earnings from alternative employment must be subtracted from any award of front pay. *See Reneau*, 945 F.2d at 870.

     Plaintiff seeks a front pay award of $214,620, that is, $3,577 per month for the next five years. (D.E. 64.) Defendant does not dispute that, at the time of his termination, Plaintiff earned a monthly salary and benefits of $3,577, and this figure was supported by the evidence at trial. Accordingly, the only issue for the Court to decide is the proper length of the front pay award. Plaintiff argues that he intended to work in corrections for the rest of his life and that Defendant took steps to interfere with Plaintiff's ability to obtain employment in law enforcement, security, and corrections by informing prospective employers that Plaintiff was fired for gross misconduct and that he was ineligible for rehire because he held an expired Texas Commission on Law Enforcement Officer Standards and Education (TCLEOSE) license. (D.E. 64 at 4–5; D.E. 64-1.) Defendant counters that Plaintiff failed to mitigate his damages, as evidenced by the affidavit from Warden Sanchez, stating the Plaintiff never applied for employment with the East Hidalgo Detention Center. (D.E. 67 at 2.)

Plaintiff has the burden to submit evidence from which the Court can make a reasonable projection about how long it will take to find the same or comparable employment, *Goss v. Exxon Office Systems Co.*, 747 F.2d 885, 889 (3d Cir. 1984); *Shore v. Federal Exp. Corp.*, 777 F.2d 1155, 1160 (6th Cir. 1985); *Yousuf v. UHS of De La Ronde, Inc.*, No. 97–0614, 1999 WL 301701, at *4 (E.D. La. May 10, 1999); whereas, Defendant bears the burden of proving the affirmative defense of failure to mitigate and establishing the amount that the front pay should be reduced. *Jackson v. Host Intern., Inc.*, 426 Fed. App'x 215, 224 (5th Cir. 2011).  The evidence at trial demonstrated that, after he was terminated, Plaintiff attempted to find equivalent employment, but Defendant intentionally interfered with Plaintiff's efforts by informing prospective employers that Plaintiff had been terminated for gross misconduct, that Plaintiff could not be re-hired, and that Plaintiff's certifications were out of date. (D.E. 64-1.)  Plaintiff did not, however, provide evidence of any recent efforts on his part to obtain employment. Defendant presented evidence that Plaintiff is currently eligible, but has not applied for, employment at the East Hidalgo Detention Center, indicating that an equivalent job in his geographic area is currently available. (D.E. 67 at 5.)

In the end, the evidence does not support a 60-month award of front pay. Defendant's actions damaged Plaintiff's reputation and handicapped Plaintiff's ability to obtain employment in the law enforcement or security industry in Plaintiff's geographic area, potentially long-term.  However, given Plaintiff's age and physical condition, Plaintiff should be able to find substitute work with some effort.  Accordingly, the Court awards Plaintiff $42,924 in front pay ($3,577 per month for the next 12 months months).

## C. Punitive Damages

First, Defendant argues that there was no credible evidence presented at trial that Defendant acted with malice or reckless indifference, or that he was fired or forced to quit because he helped a fellow employee file a sexual harassment claim; therefore, Defendant requests that the Court set aside the jury's award of punitive damages. (D.E. 55 at 2; D.E. 60 at 2; D.E. 65 at 1–2.) Although not specifically identified as such, the Court interprets Defendant's request as a renewed motion for judgment as a matter of law pursuant to FED. R. CIV. P. 50(b). Plaintiff responds that there was sufficient evidence of malice presented at trial; and moreover, if Defendant believed there was a lack of evidence to support an award of punitive damages, Defendant was obligated to object to the jury charge and instruction before it was submitted to the jury. (D.E. 57 at 4.)

Although Defendant's request is premature because a judgment has not been entered, the Court will address the issue. The Court rejects Defendant's Rule 50(b) motion. When a party fails to raise an issue in a Rule 50(a) motion before the case is submitted to the jury, it waives the right to raise that issue in a Rule 50(b) motion after the verdict. *See Md. Cas. Co. v. Acceptance Indem. Ins. Co.*, 639 F.3d 701, 707–08 (5th Cir. 2011). At the close of Plaintiff's evidence on May 21, 2013, Defendant moved for a "directed verdict." Under the federal rules, this is known as a Rule 50(a) motion for judgment as a matter of law. Defendant argued that no reasonable jury could find in favor of Plaintiff because (1) the evidence demonstrated Plaintiff was not fired, but resigned; and (2) the evidence demonstrated that it was a requirement of Plaintiff's job to assist in the investigation of EEOC complaints. (Second Day of Jury Trial, ERO Record.

11:48.55.) Defendant never argued a lack of evidence of malice or reckless indifference to support an award of punitive damages. Accordingly, Defendant waived its right to file a renewed post-verdict Rule 50(b) motion challenging the sufficiency of the evidence on this issue. Regardless, the Court finds there was sufficient evidence presented at trial to support an award of punitive damages.

Second, Defendant argues that the jury's punitive damages award of $150,000 must be reduced to $100,000, which is the statutory limit for a company with 200 employees or less under 42 U.S.C. § 1981a(b)(3)(B). (D.E. 55 at 2; D.E. 60 at 2; D.E. 65 at 2.) Plaintiff responds that this issue was waived because Defendant failed to plead a limitation on damages in any of its pleadings; and furthermore, the undisputed evidence demonstrates that LCS employs far more than 200 people. (D.E. 57 at 4; D.E. 62 at 2–5; D.E. 66 at 1–6.)

It is unsettled in the Fifth Circuit, and elsewhere, whether Section 1981a(b)(3)'s cap on damages is an affirmative defense that must be raised in a party's pleadings or waived. *See Giles v. Gen. Elec. Co* ., 245 F.3d 474, 492 n. 32 (5th Cir. 2001) (noting that other courts have "reasoned persuasively" that Section 1981a(b)(3)'s cap is *not* an affirmative defense that can be waived); *Walker v. United States*, No. 06-2167, 2008 WL 2641334, at *3 (W.D. La. July 1, 2008); *Ortega-Guerin v. City of Phoenix*, No. CV 04-0289-PHX-MHM, 2006 WL 2403511, at *1 (D. Ariz. Aug. 14, 2006); *Oliver v. Cole Gift Centers, Inc.*, 85 F. Supp. 2d 109 (D. Conn. 2000) (holding that statutory cap is not an affirmative defense and not waivable). As there is no clear legal requirement to plead

Section 1981a(b)(3)'s damages cap as an affirmative defense or to raise the issue during trial, the Court rejects Plaintiff's waiver argument.

Defendant argues that punitive damages should be capped at $100,000 as neither Defendant LCS nor the Coastal Bend Detention Center has over 200 employees. (D.E. 65 at 3.)  In Title VII cases, punitive damages are statutorily capped at $100,000 for any defendant who has more than 100 and fewer than 201 employees in each of the 20 or more calendar weeks in the current or preceding calendar year. § 1981a(b)(3)(B). Defendant presented an e-mail that was sent to Richard Harbison, Executive Vice President of LCS, showing the bi-weekly employee counts for the Coastal Bend Detention Center for the past 20 weeks. (*Id.* at 11.)  The list indicates that the Detention Center's maximum number of employees during this period was 166.  In his affidavit, Mr. Harbison states that the Coastal Bend Detention Center employs 194 people, and that it has never exceeded this number since the facility was built. (D.E. 55 at 4.)  No explanation was given for these conflicting numbers.  Based on the evidence, the Court finds that at no time in each of the past 20 calendar weeks did the Coastal Bend Detention Center have more than 194 employees. (*Id.*)  Defendant further asserts that Mr. Harbison established that LCS has only 7 employees. (D.E. 65 at 3.)  However, what Mr. Harbison actually said in his affidavit was that LCS is "a management company for 7 correctional institutions." (D.E. 55 at 4.)  Mr. Harbison never indicated the number of staff members employed by LCS.

Ultimately, it is the defendant employer seeking to impose a Section 1981a(b)(3) cap on punitive damages that bears the burden of proving that it employed fewer than the requisite number of employees. *See Concrete Pipe & Products of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 628–30 (1993); *Hernandez-Miranda v. Empresas Diaz Masso, Inc.*, 651 F.3d 167, 175–76 (1st Cir. 2011); *Mendez v. Perla Dental*, No. 04-C-4159, 2008 WL 821882, at *4 (N.D. Ill. 2008) ("[d]efendants bear the burden of proof in establishing the number of employees . . . during the relevant time period"); *Dominic v. DeVilbiss Air Power Co.*, No. Civ. 05-5016, 2006 WL 516847, at *4 (W.D. Ark. 2006) ("it is the defendant (and not the plaintiff) who has the burden of establishing the number of defendant's employees"); *Hamlin v. Charter Twp. of Flint*, 965 F.Supp. 984, 988 (E.D. Mich. 1997) ("the burden of establishing the number of employees is [d]efendants' "). "The ordinary rule, based on considerations of fairness, does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 60 (2005) (quoting *United States v. N.Y., N.H. & H.R. Co.*, 355 U.S. 253, 256 n. 5 (1957)).

In the case at hand, it is uncontested that LCS and the Coastal Bend Detention Center individually employed 200 or fewer employees. However, Plaintiff seeks to aggregate all LCS's employees at its eight facilities. (D.E. 66 at 2.) On its website, LCS boasts that it employs "nearly 800 staff members at its eight facilities" (D.E. 66-1 at 1), and on another page, that it employs over 900 staff members at its facilities in Alabama, Louisiana, and Texas. (D.E. 66 at 4.) Plaintiff argues that the Court should take into account all these employees in deciding whether to impose a damages cap.

In determining entity liability under Section 1981 and whether distinct entities constitute a single integrated enterprise for purposes of imposing a damages cap under Section 1981a(b)(3), the Court may consider the following factors: (1) the interrelatedness of the entities' operations, (2) whether there is centralized control of labor, (3) whether there is common management, and (4) whether there is common ownership or financial control. *Vance v. Union Planters Corp.*, 279 F.3d 295, 297 (5th Cir. 2002). The Fifth Circuit, however, has "consistently focused, almost exclusively, on 'one question: which entity made the final decisions regarding employment matters relating to the person claiming discrimination?' " *Id.* at 301 (quoting *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 617 (5th Cir. 1999)); *see also Schweitzer v. Advanced Telemarketing Corp.*, 104 F.3d 761, 765 (5th Cir. 1997) ("The critical question is the following: which entity made the final decisions regarding employment matters related to the person claiming discrimination?"); *Chaiffetz v. Robertson Research Holding, Ltd.*, 798 F.2d 731, 735 (5th Cir. 1986) ("We place[] highest importance on the second [*Trevino*] factor, rephrasing and specifying it so as to boil down to an inquiry of 'what entity made the final decisions regarding employment matters related to the person claiming discrimination.' ") (quoting *Trevino v. Celanese Corp.*, 701 F.2d at 397, 403–04 (5th Cir. 1983).

Based on the evidence in the record, the Court finds that LCS and the Coastal Bend Detention Center can be treated as a single integrated enterprise for purposes of imposing a statutory damages cap under Section 1981a(b)(3). Plaintiff sued LCS as "LCS d/b/a Coastal Bend Detention Center." (D.E. 1.) Defendant never objected to this

characterization of the two entities as a single, integrated enterprise. Additionally, the evidence presented at trial showed that the Coastal Bend Detention Center assisted in the drafting of the violation reports against Plaintiff, and that the two entities acted together in terminating Plaintiff. (*See* Tr. Exs. 1–12.) There is no evidence, however, that Defendant's other affiliates were involved in the decision-making process. Accordingly, the Court cannot integrate the other LCS affiliates.

There is conflicting evidence regarding the number of staff members employed by Defendant LCS and the Coastal Bend Detention Center. Richard Harbison, the Vice President of LCS, claims in his affidavit that the Coastal Bend Detention Center employs 194 people. A bi-weekly employee count supplied by Shawna Beals in an e-mail to Harbison on July 17, 2013 (D.E. 65 at 11) revises that number downward by about 30 people to a maximum of 166 employees over the past 20 weeks. There is no indication of who performed the count, how it was performed, or why it differed from Mr. Harbison's earlier count of 194. In its briefing, Defendant acknowledges that LCS has at least 7 employees. (D.E. 65 at 3; D.E. 60 at 2.) Consequently, Defendant's evidence demonstrates that LCS and the Coastal Bend Detention Center, in the aggregate, may have employed 201 employees. Defendant had the burden to show that it employed fewer than 201 employees to qualify for the statutory cap under Section 1981a(b)(3)(B). Defendant failed to carry its burden. Accordingly, the Court will not reduce the jury's punitive damages award.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Attorney Fees (D.E. 39) is GRANTED IN PART and DENIED IN PART. The Court awards Plaintiff $40,625 in attorney's fees. Plaintiff's Motion for Front Pay (D.E. 40) is GRANTED IN PART and DENIED IN PART. The Court awards Plaintiff $42,924 in front pay. Defendant's Objection to Jury's Punitive Damages Award (D.E. 55) is OVERRULED. The Court will not reduce the jury's punitive damages award.

ORDERED this 5th day of August, 2013.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE